IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J.Z.[1],

        Plaintiff,

v.                                                                  Case No. 20-1280-JWB

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 13, 16, 17.) The Commissioner's decision is REVERSED AND REMANDED for the reasons set forth herein.

**I.  Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of

performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

**II.     Background and Procedural History**

Plaintiff filed an application for disability insurance benefits, alleging a disability beginning December 30, 2017, when he was 48 years of age. (Tr. at 15, 196.[2]) His claim was denied administratively both initially and upon reconsideration. Plaintiff then requested an evidentiary hearing before an Administrative Law Judge (ALJ), which was held on September 26, 2019, in Topeka, Kansas, before ALJ Scott Johnson. Plaintiff appeared and testified at the hearing. A vocational expert, Denise Waddell, also testified. (*Id.* at 15.) The ALJ issued a written opinion denying Plaintiff's application on November 14, 2019.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 18.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and thoracic spine, degenerative joint disease in the bilateral knees, and obesity. (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id.* at 19.)

---

[2] Citations to "Tr." refer to Bates page numbers in the administrative transcript. (Doc. 12.)

The ALJ next determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: Plaintiff can only occasionally climb ramps and stairs, but he can never climb ladders, ropes, or scaffolds. Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl. Plaintiff should avoid all hazards including the use of moving machinery and exposure to unprotected heights. (Tr. at 19.)

In determining Plaintiff's RFC, the ALJ reviewed the medical evidence and Plaintiff's reported symptoms. Plaintiff alleged intermittent low back and upper back pain that is exacerbated by movement which affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. Plaintiff also testified that he could stand no more than twenty-to-forty minutes at a time, walk no more than thirty minutes at a time, and sit for no more than forty-five minutes to an hour. (*Id.* at 20.) The ALJ noted that Plaintiff reported the ability to perform personal care tasks independently, including shopping in stores, going out alone, and driving short distances. Plaintiff also testified that he could perform some household tasks, such as running the vacuum and doing a load of laundry once every two or three days. Plaintiff testified that he does not do any household repairs or yardwork. Plaintiff has struggled with back pain and the pain is increased with prolonged sitting, standing, lifting, and bending. (*Id.* at 43.) Plaintiff typically alternates between sitting and laying down during the day. (*Id.* at 53.) With respect to Plaintiff's allegations of significant symptoms and limitations, the ALJ determined that while his impairments could reasonably be expected to cause the symptoms he alleges, the statements regarding the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence. (*Id*. at 20.)

With respect to the medical evidence regarding Plaintiff's bilateral degenerative joint disease in the knees, the ALJ noted that the bulk of Plaintiff's treatment history occurred prior to

the alleged onset date. Plaintiff has undergone two left knee arthroscopies and steroid injections. After the alleged onset date, the ALJ noted that Plaintiff has generally only received pain management treatment although the record does show that he received steroids in his left knee in May 2019. (*Id.* at 738.) At that visit, Plaintiff discussed that he had been experiencing more discomfort. The x-rays revealed minimal tricompartmental degenerative changes of the left knee, and mild to moderate lateral and minimal medial compartment degenerative joint disease of the right knee. (*Id.* at 21.)

With respect to Plaintiff's back pain, prior to the alleged onset date, Plaintiff underwent evaluations by multiple providers. During 2017 and 2018, the ALJ determined that Plaintiff was treated with pain medication exclusively. (*Id.* at 21.) In April 2019, Plaintiff went to his pain management provider to complain that his medication was not alleviating his pain. Examination showed limited range of motion with flexion. (*Id.* at 770.) Dr. Veloor ordered physical therapy and anti-inflammatory medication. Plaintiff returned in May 2019 after his pain was not relieved and the examination again showed limited range of motion with flexion and extension along with lumbar paraspinal tenderness. (*Id.* at 768.) Dr. Veloor ordered an MRI scan which revealed mild degenerative disc disease and moderate narrowing of the left neural foramen. (*Id.*) Dr. Veloor explained the results to Plaintiff and also noted that Plaintiff has tried multiple injections in the past and that he has tried and failed therapy. Plaintiff had also tried "several different medications" without much benefit. (*Id.* at 762.)

The ALJ noted that the MRI findings revealed no changes from previous scans in 2014 and 2015. The ALJ further found that the reports did not demonstrate disabling functional limitations. Dr. Veloor encouraged Plaintiff to consider epidural steroid injections with Dr. Giroux. (*Id.*) The ALJ stated that the record does not show Plaintiff received the treatment. (*Id.* at 22.) According

5

to the record, on October 7, 2019, Plaintiff reported to Dr. Veloor that he was scheduled for a consultation with Dr. Giroux. (*Id.* at 764.)

The ALJ found that clinical findings did not support Plaintiff's allegations of disability because he had not presented with a persistent pattern of chronic motor, sensory, strength, or reflex deficits consistent with his allegations. The ALJ then reviewed the medical opinions in the case. There were two state agency medical consultants, Dr. Parsons and Dr. Lee. They both opined that Plaintiff was capable of sedentary exertion level work with additional postural and environmental hazards. Specifically, they determined that Plaintiff could frequently lift and/or carry 10 pounds and stand and/or walk (with normal breaks) for a total of 2 hours a day. (*Id.* at 94, 108.) The ALJ found these opinions unpersuasive because the evidence did not support their limitations. Dr. Veloor also opined that Plaintiff could only stand for 2 hours in an 8-hour day and further opined that Plaintiff had more severe limitations, including restrictions on his ability to sit. (*Id.* at 776.) Dr. Veloor further opined that Plaintiff would need to take more than six unscheduled breaks, would be off-task twenty-five percent of the day, and would miss more than four days per month of work. The ALJ found that the opinion was not persuasive because it was not consistent with the nominal objective findings in the record.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a compression machine operator. (*Id.* at 24.) Finally, at step five, the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy. Citing the testimony of the vocational expert, the ALJ found Plaintiff can perform the requirements of representative SVP 2, unskilled jobs at the light exertional level, including: electrical assembler (DOT code 729.684-054; 55,300 jobs in the national economy); folding machine operator (DOT code 208.685-014;

46,300 jobs in the national economy); and a retail price marker (DOT code 209.587-034; 71,400 jobs in the national economy).  (*Id.* at 25.)

Plaintiff argues the ALJ's RFC is not supported by substantial evidence.

## III.   Analysis

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence in that all three medical opinions in the record found Plaintiff more limited than the ALJ did, and the ALJ's reasons for rejecting the medical opinions and Plaintiff's subjective complaints are not supported by substantial evidence.

The court is tasked with determining whether the ALJ's RFC is supported by substantial evidence.  To do so, the court first looks to the RFC which states that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)."  (Tr. at 19.)  The ALJ then set forth some additional limitations regarding ramps, stairs, ladders, ropes, and scaffolds.  He also noted that Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*)  The court must turn to the regulations to determine what work-related activities the ALJ concluded Plaintiff could perform in finding that Plaintiff could perform "light work."

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.... Many unskilled light jobs are

performed primarily in one location, with the ability to stand being more critical than the ability to walk...." *See* SSR 83-10, 1983 WL 31251, at *6 (1983) (explaining light work requirements).

In reviewing the decision, the ALJ does not make findings as to Plaintiff's ability to stand and/or walk during the workday nor does he make findings regarding Plaintiff's ability to lift and carry objects. As noted above, a finding of light work requires standing or walking for 6 hours in an 8-hour workday. Also, the claimant must be able to lift and carry objects weighing 20 pounds. Because the ALJ did not include restrictions in the RFC regarding these abilities, the court assumes that he found that Plaintiff could perform these abilities. Otherwise, the ALJ would have included more restrictions in the RFC. (Tr. at 24) (finding that Plaintiff's "subjective complaints did not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision.")

While the ALJ makes the RFC determination and the Tenth Circuit has held that a specific medical opinion on every functional capacity in question in not required, the ALJ's RFC determination must be supported by substantial evidence. *Chapo v. Astrue*, 682 F.3d 1285, 1287–89 (10th Cir. 2012). Here, all three medical opinions found that Plaintiff could not perform light work. While Plaintiff does not argue that the ALJ utilized an incorrect standard in evaluating the opinions, Plaintiff argues that substantial evidence does not support his decision regarding the opinions and the ultimate RFC. A review of the opinions and the ALJ's decision is necessary to address this argument.

The new regulations, which are applicable given Plaintiff's application date, govern the review of medical evidence for Plaintiff's claims. The regulations state that the social security agency will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the

claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the agency will consider specific factors, including the supportability, consistency, relationship with the claimant, physician's specialization, and other factors. *Id.*; § 404.1520c(c)(1)–(5). A medical opinion is defined as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions," while prior administrative medical findings are those from "[f]ederal or [s]tate agency medical or psychological consultants." *Id.* § 404.1513(a)(2); § 404.1513a(b)(1); § 404.1513(a)(5). According to the regulation, in evaluating the persuasiveness of the medical opinions or findings, the most important factors are supportability and consistency. *Id.* § 404.1520c(a). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [the] medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As to the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

Turning to the opinions of Dr. Parsons and Dr. Lee, both of these state agency physicians opined that Plaintiff had exertional limitations which resulted in a finding that Plaintiff was capable of doing sedentary work. Specifically, both doctors found that Plaintiff could frequently lift and/or carry 10 pounds, stand and/or walk for a total of 2 hours, and sit for about 6 hours in an 8 hour workday. (Tr. at 94, 104.) In support of these findings, the doctors opined that the limitations were supported by the imaging, which demonstrated degenerative disease; the medical examinations, which documented some limitations of movement, particularly extension and

forward flexion; and Plaintiff's cessation of usual activities because of pain. (*Id.*) They also found that Plaintiff could climb stairs occasionally and never crawl or kneel. (*Id.*)

In reviewing those opinions, the ALJ stated as follows:

> The undersigned considered the opinions of non-examining State agency medical consultants CA Parsons, M.D. and Charles K. Lee, M.D. (Exhibits B3A and B4A). Drs. Parsons and Lee opined that the claimant is capable of sedentary exertion level work with additional postural and environmental hazards. Drs. Parsons and Lee's opinions are not persuasive because the evidence in the record does not support their limitations. For example, as noted above, despite the claimant's reports of the inability to stand for prolonged periods or to lift heavy objects, [it] is inconsistent with objective findings that showed the claimant did not exhibit any strength or sensory deficits. Nor is it consistent with the claimant's own testimony that he could walk thirty minutes at a time and stand twenty-to-forty minutes at a time. Moreover, while their postural limitations is [sic] inconsistent with the claimant's testimony that he could climb stairs and could kneel if done gently.[3]

(Tr. at 23.)

Plaintiff argues that the cited inconsistencies above in the record are not actually inconsistent and the record supports the opinions. In response, the Commissioner states that the ALJ "properly evaluated" the opinions and "reasonably provided a few examples of how he considered these two factors, and he referenced the 'evidence of record' that was discussed earlier in his decision." (Doc. 16 at 9.) The Commissioner does not address Plaintiff's arguments that the ALJ's analysis of the medical record is flawed, essentially arguing that the court is not to determine the sufficiency of the "articulation" but whether substantial evidence supports the decision. (*Id.* at 10-11.) The court is unpersuaded by this argument. The regulations require the ALJ to explain his decision using the factors. If that analysis is flawed because the evidence is not what the ALJ states that it is, then that determination is not supported by substantial evidence.

---

[3] While the court recognizes that this last statement by the ALJ is grammatically incorrect, the court includes it here because it is relevant to the discussion in this order.

10

Although some determinations, if flawed or incorrect, could be harmless, the court still must determine whether the ALJ's finding regarding a medical opinion is properly supported.

Here, the ALJ stated that the opinions were inconsistent with Plaintiff's "own testimony that he could walk thirty minutes at a time and stand twenty-to-forty minutes at a time." (Tr. at 23.) The ALJ provides no explanation as to how Plaintiff's testimony is inconsistent with the opinions. Drs. Parsons and Lee opined that Plaintiff could stand and/or walk for 2 hours in an 8-hour workday. Based on the record, Plaintiff testified that he had to frequently change positions throughout a day. Specifically, Plaintiff had to go from standing to sitting to laying down. Plaintiff further testified that he sits down from a half an hour to 45 minutes at a time and then lays down about the same amount of time. (*Id.* at 53.) This is repeated from two to four times a day. Based on all of the testimony, the fact that Plaintiff can stand for twenty-to-forty minutes at a time does not mean that he can stand more than 2 hours in an 8-hour period. This perceived inconsistency by the ALJ is not supported by the record. The ALJ further found that the postural limitations in the opinions were inconsistent with Plaintiff's testimony that he could climb stairs and "could kneel if done gently." (*Id.*) The state agency physicians, however, found that Plaintiff could occasionally climb stairs, which is consistent with the RFC formulated by the ALJ and Plaintiff's testimony. With respect to kneeling, both doctors opined that Plaintiff could never kneel. In support of that opinion, they opined that kneeling would "aggravate his knee pain particularly on the left as well as requiring posture which will aggravate his back pain." (*Id.* at 90, 104-05.) When testifying, in response to a question as to whether he was "able to kneel at all on" his knees, Plaintiff stated that he could kneel if done "very gently." (*Id.* at 56.) The fact that Plaintiff testified that he could kneel, if done very gently, does not contradict a medical opinion that Plaintiff should never

11

kneel because it would aggravate his knee, nor does it suggest that Plaintiff could kneel on a frequent or occasional basis.

Even if the ALJ's general references to inconsistency in the record supported his findings regarding these opinions, by rejecting every opinion in the record, the ALJ was left without a single medical opinion to rely on in forming the RFC determination. None of the medical opinions in the record opined that Plaintiff was capable of light work. Although a medical opinion is not required for the RFC determination, "[i]n cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance." *Pedraza v. Berryhill*, No. 17-2152-SAC, 2018 WL 6436093, at *4 (D. Kan. Dec. 7, 2018) (citing *Wells v. Colvin*, 727 F.3d 1061, 1071-1072 (10th Cir. 2013)).

While the ALJ extensively discussed the medical evidence in this case, he failed to connect how that evidence supported a finding that Plaintiff could perform the work functions of light work. In arguing that the RFC is supported by substantial evidence, the Commissioner cites to the ALJ's discussion of some normal examination findings, Plaintiff's activities, normal gait, and no swelling in Plaintiff's legs. (Doc. 16 at 11.) However, the ALJ also discussed that the medical records show that Plaintiff has a "limited range of motion in the lumbar spine, tenderness along the right lumbar facet joints, and tenderness to palpation in the shoulder blades." (Tr. at 22.) The medical records do support Plaintiff's allegations of pain due to his conditions and extensive treatment history.

Further, the ALJ did not make any findings regarding Plaintiff's ability to walk or stand for long periods of time and ability to lift and/or carry a specific amount of weight. Although the

ALJ discussed his reasons for discounting Plaintiff's subjective complaints and all three medical opinions, he did not sufficiently explain how Plaintiff could perform the requirements of light work. In light of the medical opinions that contradict the ALJ's findings and a lack of discussion supported by citation to the record regarding Plaintiff's ability to perform the requirements of light work, the court cannot conclude that substantial evidence supports the ALJ's RFC. *See Ruben M. v. Kijakazi*, No. CV 20-2530-JWL, 2022 WL 457796, at *3–4 (D. Kan. Feb. 15, 2022); *see also Probst v. Colvin*, No. 14-1207-SAC, 2015 WL 5125475, at *2–4 (D. Kan. Sept. 1, 2015); *Pedraza*, 2018 WL 6436093, at *4 (finding error after ALJ rejected all medical opinions and failed to provide an explanation as to how the plaintiff could perform light work).

Therefore, this matter will be remanded. The court declines to review Plaintiff's arguments regarding Dr. Veloor's opinions and Plaintiff's subjective complaints as the ALJ may reconsider those issues on remand.

**IV.   Conclusion**

The Commissioner's decision is REVERSED and REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED. Dated this 23rd day of March, 2022.

                                                           s/ John W. Broomes  
                                                           JOHN W. BROOMES  
                                                           UNITED STATES DISTRICT JUDGE